# JAMES W. COLLITON v. D. C. WARDEN.[1]

### July 15, 1910.

### Nos. 16,639—(165).

**Breach of contract — evidence insufficient to sustain verdict.**

> Action to recover damages for the breach of an alleged contract for a loan of money by the defendant to the plaintiff to enable him to redeem his lot from a sale thereof on the foreclosure of a mortgage thereon. The trial court dismissed the action, on the ground that the plaintiff failed to prove a cause of action. Evidence considered, and *held*, that it was not sufficient to sustain a verdict for the plaintiff.

Action in the district court for Hennepin county to recover $3,000 damages for loss of an equity of redemption from defendant's failure to make a loan. The substance of the pleadings is stated in the opinion. The case was tried before Holt, J., who, after plaintiff rested, granted defendant's motion to dismiss on the ground that plaintiff had failed to prove a cause of action. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Larrabee & Davies* and *Paul J. Thompson,* for appellant.

*Charles J. Tryon,* for respondent.

START, C. J.

This action was brought in the district court of the county of Hennepin to recover damages for the breach of an alleged contract for a loan of money by the defendant to the plaintiff to enable him to redeem his lot in the city of Minneapolis from a sale thereof on the foreclosure of a mortgage thereon. The trial court at the close of the plaintiff's evidence granted defendant's motion to dismiss the

[1]Reported in 127 N. W. 1.

[Note] Damages for breach of contract to loan or advance money, see note to Lowe v. Turpie (Ind.) 37 L. R. A. 233.

action. The plaintiff appealed from an order denying his motion for a new trial.

The complaint alleged that the plaintiff was, in the month of June, 1909, the owner of the lot which was then worth $5,000, subject to a foreclosure sale thereof, which was subject to redemption on the payment of $2,000 on or before June 29, 1909; that he applied to the defendant for a loan, to be secured by a mortgage on the lot, for $2,000, for the purpose of making such redemption, and informed him of the purpose for which the loan was to be made and the money used; that thereupon the parties entered into a contract whereby the defendant agreed to make the loan for such purpose; and, further, that the defendant, on June 29, 1909, in violation of the contract refused to make the loan, and the plaintiff was thereby prevented from redeeming his lot, to his damage in the sum of $3,000, the value of his equity of redemption. The answer, except as admitted therein, denied the allegations of the complaint and affirmatively alleged, in effect, that the plaintiff applied to the defendant for a loan of $2,000, to be secured by a mortgage on his lot, but did not tell the defendant that the then existing mortgage had been foreclosed; that the defendant then informed the plaintiff that if he would furnish an abstract of title, which upon examination by an attorney would show title to the lot in the plaintiff, the defendant would procure a loan of $2,000 on the lot for the plaintiff; and, further, that no abstract was furnished to the defendant until June 29, 1909, the day the redemption from the foreclosure sale expired, when it was impossible to examine and investigate the title to the lot and make the loan before the expiration of the time of redemption from the sale.

. On the trial plaintiff gave testimony, with other evidence not here material, to the effect following: On June 20 I made an application to the defendant for a loan to be secured by a mortgage on my lot. I told him I wanted a loan of $2,000 to redeem my property from the mortgage foreclosure sale, and that I had to redeem on June 29 or lose it. "Q. What assurance did he give you that he would make it not later than the 29th? A. Well, the assurance was that he had the money where he could put his hand on it at any moment, his

own money, and that he would make it. I took it for granted he would make it. Q. Did he ask you to come down to his office? A. Yes. Q. What was said about that? A. He said to come down to his office and put it into writing." I went to his office on June 23d, and signed and delivered to defendant the following memorandum: "Lot 16, block 4, Baker's 2d addition to Minneapolis 46 x 128 to alley. James W. Colliton; Rose L. Colliton, wife. Loan of $2,000, 7 per cent. interest, semiannually. Coupon notes—3 years (straight). Fire insurance, $2,000. Allowance for commission, expenses, etc., $70. Mr. Colliton agrees to put in water connections and meters at my new residence 22d St. and Humboldt Ave. So. for $20." He signed, by his initials, a duplicate of the memorandum. "Q. Well, what next transpired after that? * * * A. I got busy in bringing my abstract down to record. Q. What was said about that? A. Well, he insisted on having it brought down to date. I got an insurance policy out, and brought the abstract down to date, and put in this water in his own building. Q. When did you go in with the abstract? A. I didn't catch him until the morning of the 29th. I went there the 27th and 28th, but I didn't find him until the morning of the 29th of June. Q. Did you have your abstract brought down to date? A. I did; yes. Q. Did you have that with you? A. Yes. Q. When you went in there on the 29th, tell us what was said, what the conversation was, between you. A. I told him: 'Mr. Warden, I have been trying to catch you for a couple of days; it was pretty hard to find you in the office.' He said he was busy. I said: 'This is the last day of the mortgage of mine. I have got all the papers drawn up and everything. Here is the abstract and insurance policy and everything, and we can fix it up, if you have time.' He says: '* * * It is pretty quick.' I says: 'Yes; but we have to do it.' He said: 'Well,' he didn't know; and he called up his lawyer over the 'phone to find out if he could get his assistance to attend to it for him. After talking with his lawyer and so on a little bit, he told me it was too short time, he couldn't do it. I says: 'You have got to do it. I have to have this attended to and attended to to-day.' He said he wouldn't do it, and couldn't do it. He got mad about it. I

got mad a little bit, too, and left the office." This was at ten o'clock in the morning. I had no money with which to make the redemption. I tried to borrow it elsewhere, but could not, and I did not redeem my lot from the mortgage sale. "Q. What did you have your abstract brought down to date for? A. Why, to get a loan; nobody would make a loan unless the abstract was brought down, to look up the title, to see it was right. Q. Mr. Warden said he would have to look up the title? A. Yes."

The plaintiff was corroborated in some important particulars by the testimony of his daughter; but there was no evidence more favorable to him than his own testimony. The plaintiff called a loan agent, who gave, with other testimony, the following: "Q. Do you remember whether or not, Mr. Davis, on the 29th day of June, which was the last day of the year of redemption, he [the plaintiff] called upon you on that day and asked you for a loan? A. He called upon me about that time, and it was so late I couldn't do anything. I couldn't examine no abstract or nothing then. Q. You don't recollect whether it was the 29th? A. No, sir; I don't just recollect the date. I would want more than one day." Other than this, and the fact that the lot was in the platted part of the city of Minneapolis, there was no evidence as to the bulk of the abstract, the number of transfers in the chain of title, or as to what would be a reasonable time in which to examine the abstract and pass upon the title to the lot.

The trial court, upon this showing and on motion of defendant, dismissed the action. The sole question here to be determined is whether this action of the court was legally correct. If the evidence on behalf of the plaintiff, taking the most favorable view of it for him permissible, would not, as a matter of law, support a verdict in his favor, the action of the court was right; otherwise, it was error.

A careful consideration of the evidence has led us to the conclusion that the trial court did not err. If it be conceded, for the purpose of a decision of this case, that the alleged contract to make the loan was made, and that it was not within the statute of frauds, as the defendant claims, still the evidence shows no breach of the con-

tract. It appears from the plaintiff's testimony that the loan was to be secured by a mortgage on his lot—that is, it was not to be made unless it was so secured; that he was to furnish an abstract of title brought down to date, so that the title could be examined by the defendant; that after the abstract was furnished the defendant "would have to look up the title to see it was right." This necessarily implied that the abstract should be furnished in time to allow the defendant a reasonable opportunity in which to have the abstract examined and the title investigated before making the loan. The burden was on the plaintiff to show that the abstract was furnished within such reasonable time. The evidence shows that the abstract was not furnished until ten o'clock a. m. of the day the redemption expired, and that the defendant, after consulting with his attorney, declined to proceed with the loan, for the reason that the time was too short in which to examine the title and make the loan.

We must take a practical and just view of the evidence, not a sentimental one, much as we regret the plaintiff's loss of his equity of redemption. So considering the evidence, it is obvious that the abstract was not furnished within a reasonable time, and that the evidence was clearly insufficient to support a verdict for the plaintiff.

Order affirmed.